RAYMOND K. BURROUS AND BESS L. BURROUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burrous v. Commissioner
Docket No. 2826-76.
United States Tax Court
T.C. Memo 1977-364; 1977 Tax Ct. Memo LEXIS 74; 36 T.C.M. (CCH) 1465; T.C.M. (RIA) 770364; October 17, 1977, Filed Raymond K. Burrous, pro se. Thomas F. Kelly, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes, plus additions to the tax under section 6653(a), [1] for the years in issue: Year
Deficiency
Sec. 6653(a) Addition
1972
$1,033.68
$51.68
1973
$1,609.92
$80.50
Other issues having been settled by the parties, the sole issue for decision is whether petitioners are entitled to deduct as advertising expenses the cost of racing a midget auto racer. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the *75 time they filed their petition, petitioners Bess L. Burrous and Raymond K. Burrous resided in Marysville, California. Bess L. Burrous is a party only by virtue of having filed a joint return with her husband. When we hereafter refer to petitioner, we will be referring to Raymond K. Burrous. Petitioner has been an accountant and tax return preparer since 1963; his office is located in his home in Marysville. During the years in issue, 65 percent of the gross receipts of petitioner's accounting practice was derived from general monthly accounting and 35 percent from the preparation of tax returns. Petitioner has had an interest in auto racing since 1950. He raced stock cars in 1970 and 1971. During the years in issue (1972 and 1973), he owned and raced a midget racer; he himself drove the racer until he was injured in an automobile accident in August 1973. [2] The midget racer is a hobby class car, capable of speeds up to 150 miles per hour. Petitioner entered the car in approximately 25 amateur races during the years in issue and won several trophies. Most of the races were in the Marysville area at two race *76 tracks, a midget race track and a stock car race track. The attendance at the midget race track ranged from 400 to 500 people, while the attendance at midget races at the stock car race track approximated 1,200 to 1,600 people. Some of the races that petitioner entered, however, were conducted at locations more than 200 miles from Marysville; specifically, petitioner raced twice at LeMoore, California, three times at Hayward, California, and once at the national championship race in Coffeyville, Kansas. There was no "purse" in these races; petitioner raced only for prestige, points and trophies. Petitioner usually brought his wife and grandchildren to the races. On the side of his racer petitioner painted "BURROUS ACCOUNTING SPECIAL" in large letters. Before each day's races and each day's championship race, the track announcer would broadcast that petitioner was the sponsor of the car and gave petitioner's place of business and telephone number. After the races the spectators were invited to go to the pits and inspect the midget racers. At this time, petitioner handed out business cards on which was printed his address and telephone number. Other local businesses, including *77 a florist, an upholstery shop and several automotive-related concerns, also sponsored midget auto racers. [3]
When petitioner won a race an article would appear in the local newspaper, usually on the sports page, identifying petitioner as the owner. Sometimes a picture of the car was printed with the article. Petitioner was a very successful racer and received considerable newspaper publicity. The midget racer was the only "advertising" which petitioner undertook to promote his accounting business. He did not place any advertisements in the yellow pages of the telephone book or in the local newspapers, on radio or on television. Nevertheless, from 1972 through 1975 petitioner's gross receipts from his accounting practice doubled. For the taxable years in issue petitioner deducted the following "advertising expenses" by reason of his racing activities: [4] Year
Advertising
Auto
Depreciation
Rent
1972
$1,500.00
$165.00
$270.00
$400.00
1973
1,400.00
172.00
285.00
400.00
*78 The amounts set forth as auto and depreciation are the cost of hauling the racer to the different tracks. The rental expense represents the leasing of acetylene equipment for maintaining the racer. These amounts deducted by petitioner as advertising were approximately 25 percent of his gross income from his accounting business for the years in issue.He reported no net income from his accounting business but rather a net loss for both years in issue. In his statutory notice respondent disallowed these deductions in their entireties. OPINION The sole issue herein is whether petitioner is entitled to deduct as trade or business expenses under section 162 amounts expended in racing a midget auto racer. This is a factual question and the burden of proof is on petitioner. . Section 162 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." "Ordinary" has been interpreted to mean that the expense has a reasonably proximate relation to the operation of petitioner's business ( , *79 while "necessary" has been construed to mean helpful and appropriate in promoting and maintaining petitioner's business ( . Since petitioner asserts that his racing expenditures were incurred for advertising, he must prove that his primary purpose in racing the midget auto was to call attention to and to promote his accounting business. . An objective indication of this intention is the relationship between the amount expended on the midget auto racing compared to the amount of benefits reasonably calculated to be derived by the business. Petitioner deducted racing expenses of $2,335 in 1972 and $2,257 in 1973. These amounts represented approximately 25 percent of petitioner's gross receipts from his accounting practice for each of these years. We find these expenses to be unreasonably high when compared to the calculated benefits to be derived. In each of the years in issue petitioner experienced a net loss from his accounting business.
Petitioner points to the fact that *80 his business doubled in four years (1972 through 1975) but he fails to link this fact with his midget auto racing. He did not connect any particular client or group of clients with his racing activities or his tax return preparation activities. His additional business may well have come from his satisfied clients or at the recommendation of satisfied clients. Any publicity resulting from his racing tended to promote petitioner as a sportsman rather than as an accountant. We conclude that petitioner raced the midget auto primarily because he enjoyed it, it was a hobby, and not because it was calculated to increase his accounting business. He has failed to prove a proximate relationship between the midget auto racing and any increase in his accounting business. . It is not enough that there may be some remote or incidental connection between petitioner's racing activities and petitioner's business. . In view of petitioner's failure to carry his burden of persuasion, we hold for respondent on this issue. Respondent also determined additions to tax under section *81 6653(a) for negligence or intentional disregard of rules and regulations for both years in issue.We think on the basis of the record as a whole that petitioner in good faith believed that the midget auto racing expenses were deductible as advertising and the question is not so clear that we can fairly determine that petitioner was negligent in claiming the deductions. We therefore hold that petitioner is not liable for the additions to tax. , affd. per curiam . Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Apparently another driver raced the car thereafter.↩
3. Apparently all midget auto racers had sponsoring businesses.↩
4. Petitioner stated at trial that these amounts represented only about half of the costs of the midget racer.↩